UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW GALANTOWICZ, on behalf of himself and
all others similarly situated,

                              **Plaintiff,**               **BINDING MEDIATOR'S AWARD**

    **vs.**

RHINO ROOM INC. d/b/a Buffalo Chophouse,       **Civil Action No. 12-CV-971**
and MARC CROCE,

                          **Defendants.**

---

### PRELIMINARY STATEMENT

Pursuant to a stipulation of the parties in the above-captioned action, I was selected to render a binding mediator's award settling this matter, subject to approval by the Court. As more fully discussed below, the mediator's award in this matter will be $163,031.45.

### BACKGROUND INFORMATION

Plaintiff Matthew Galantowicz commenced this collective and putative class action pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") on October 15, 2012. A motion for class certification was never filed, but notice of the collective action was sent, ultimately resulting in twenty-three (23) plaintiffs participating in this lawsuit and subject to the mediation award to be rendered. The Plaintiffs were all former servers, hostesses and/or bussers at the Buffalo Chophouse, a high-end steakhouse in Buffalo, New York, although they were actually employed by Defendant Rhino Room, Inc. and leased to the Buffalo Chophouse. Defendant Marc Croce is the President of both Rhino Room, Inc. and Buffalo Chophouse Inc.

The Complaint alleges that a member of management unlawfully shared in the tip pool at the Buffalo Chophouse, thereby invalidating the minimum wage tip credit available to employers under the FLSA and requiring disgorgement of those tips pursuant to the NYLL.  Plaintiffs also claim that the service charge included in banquet contracts was a gratuity that should have been distributed to banquet staff.  Plaintiffs further claim that they were not provided a 30-minute uninterrupted meal period as required by the NYLL, but that Defendants automatically subtracted those 30 minutes from their time records.  Finally, the Complaint alleges a violation of the notice requirements of the NYLL.  Plaintiffs therefore seek unpaid wages, liquidated damages, interest, and attorney's fees and costs under both the FLSA and the NYLL.

The parties engaged in paper discovery and conducted one deposition.  A mediation session on December 10, 2013 did not result in a settlement of this matter.  However, on February 10, 2014, the parties filed a Stipulation for Binding Award by Mediator Robert Weissflach ("Stipulation").  *See* Dkt. 68.  In the Stipulation, the parties agreed to a process whereby they would make paper submissions to me and that I would "make all decisions regarding resolution of all issues in the case (the "Award") and [my] ruling will be binding and final on all parties on all issues in the case."  Stipulation, ¶ 1.  The parties also agreed that:  (1) the Award would be subject to a high/low limitation, including attorney's fees and costs, liquidated damages, and any service fee award (Stipulation, ¶¶ 2, 6, 9); (2) the Award would include mutual general releases (Stipulation, ¶ 5); (3) the mediator's fees in rendering the Award would be shared equally regardless of outcome (Stipulation, ¶ 8); (4) the parties would jointly seek court approval of the Award (Stipulation, ¶ 11); (5) the Award would be distributed on a pro-rata basis based on weeks worked (Stipulation, ¶ 12); (6) and that it was not necessary for me to explain the factual or legal bases for the Award in a written opinion (Stipulation, ¶ 15).

Several months after the Complaint in this action was filed, Plaintiff Matthew Galantowicz's employment at the Buffalo Chophouse ceased, for reasons and under circumstances which the parties dispute. The parties agreed that, to the extent that Mr. Galantowicz wished to make a claim for wrongful termination or any violation of law with respect to his separation from employment, he would make those claims in the mediation. Stipulation, ¶ 7. The parties submissions did in fact include information and arguments regarding Mr. Galantowicz's claims for retaliation under the FLSA and NYLL, as well as for disability discrimination and/or failure to accommodate under the Americans With Disabilities Act ("ADA") and/or the New York Human Rights Law ("HRL").

On February 14, 2014, the Court approved the Stipulation, but stated: "when the Mediator's award is submitted for approval, it must be accompanied by sufficient information to allow this Court to determine that it reflects a fair and reasonable compromise of disputed issues." Dkt. 39, ¶ 3. After certain estates were substituted in for deceased plaintiffs and other plaintiffs were dismissed or withdrew, the high/low limitations for the mediation were established at $46,920 for the low finding and $441,600 for the high finding, all inclusive. Dkt. 77, ¶ 15.

In August and September 2014, the parties submitted approximately 10,000 pages of affidavits, exhibits, spreadsheet calculations, and memoranda of law for my review. After thoroughly reviewing all of the submission and considering the arguments of the parties, I make the Award described below, which I believe, based on my experience as a labor and employment attorney, is a fair and reasonable resolution of all outstanding issues between these parties.

### BINDING MEDIATION AWARD

Although my task is to render an "Award" that is "binding," and the parties addressed the burden of proof in their respective submissions, this process still is at root a mediation, and the ultimate resolution, although "binding" on the parties, is subject to Court approval as a fair and reasonable settlement. Splitting the mediation fees and distributing the Award on a pro-rata basis are also common characteristics of FLSA/NYLL settlements. Thus, my Award is "binding" on the parties in the sense that they are obligated by their Stipulation to submit that Award to the Court for approval as a fair and reasonable settlement. Nevertheless, I was provided with far more information than most mediators receive when assessing a case, and my Award is based on my in-depth assessment of whether I believe that the Plaintiffs established their various claims by a preponderance of the evidence submitted and similarly which side in the dispute presented the most accurate and responsible calculation of alleged damages (subject to some calculations I did myself). While the ultimate outcome after further discovery, motion practice, trial, and appeal might well be different from my Award, and certainly would cost the parties far more in litigation expenses, the resolution described below is essentially what I believe is the current value of what would likely be the ultimate outcome of this matter if it went to final judgment.

Based on the foregoing, my Award is $163,031.45, broken down as follows:

| | |
|---|---|
| Settlement Amount to be distributed: | $ 98,097.18 (see Attachment A) |
| Attorney's Fees: | $ 54,152.12 |
| Costs: | $ 10,782.15[1] |
| TOTAL: | $163,031.45 |

There is no portion of the Award allocated to any service award, nor to Mr.

Galantowicz's retaliation or discrimination claims, and those claims will be waived as part of the

mutual general release to be included in this settlement. This settlement is in full and final

settlement of all claims made in this lawsuit and/or the mediation, including but not limited to

any and all claims for unpaid wages (including overtime), liquidated damages, interest,

compensatory damages, punitive damages, penalties, attorney's fees and/or costs.

In addition, subject to the Stipulation and any further order of the Court, the proposed

settlement submitted to the Court for approval should contain the following provisions:

1.     A non-admission clause stating that Defendants denied and continue to deny any

wrongdoing or legal liability arising out of any of the facts or conduct alleged in this lawsuit, and

believe they have valid defenses to all of Plaintiffs' claims. Accordingly, nothing in the

mediation or in this Award shall be offered or construed or deemed as an admission of liability,

wrongdoing, culpability, impropriety, responsibility or fault whatsoever by Defendants.

---

[1]  These costs include Plaintiffs' out-of-pocket costs in prosecuting this action, as well as their share of any mediation expenses. However, the mediation expenses were not factored into the calculation of the total Award, but instead were shifted from the Settlement Amount to be distributed to the Plaintiffs to the Costs category, thus not increasing Defendants' total to be paid. To increase the Award to cover the Plaintiffs' share of the mediation expense would inappropriately shift that expense to Defendants in contravention of the WDNY ADR Rules and the Stipulation. Defendants' share of the mediation fee, of course, is payable separate from and in addition to the Award.

2.      Plaintiffs' claims, including Matthew Galantowicz's claim for retaliation under the FLSA/NYLL and discrimination under the ADA/HRL (and any other claim regarding the separation of his employment), will be dismissed by the Court with prejudice, with each party to bear their own costs and attorney's fees, except as otherwise specified herein.

3.      Mutual general releases, which the parties indicated to me they will draft.  The release of Defendants by Plaintiffs must specifically include Buffalo Chophouse Inc. as a releasee, as well the parents, subsidiaries, affiliates, employees, officers, directors, shareholders, successors and assigns of Rhino Room, Inc. and Buffalo Chophouse Inc., and the heirs, executors, successors and assigns of Marc Croce.

4.      The settlement payments paid to Plaintiffs shall be deemed to be paid in the year in which such payments are actually paid and will not entitle Plaintiffs to any additional compensation or benefits under any company bonus, contest or other compensation or benefit plan or agreement, nor will those payments entitle any Plaintiff to any increased retirement, 401(k) benefits or matching benefits, or deferred compensation benefits. Thus, Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received a settlement payment.

5.      Except for any submission that may be necessary to obtain Court approval of this Award, and notwithstanding that submission, Plaintiffs shall not publicize the terms of this settlement or discuss the terms with third parties, other than to state that the matter has been resolved.  However, Plaintiffs may discuss the terms of this settlement with their accountants or legal advisors and report the amounts received to appropriate taxing authorities.

6.      The settlement payments to be made by Defendants[2] to Plaintiffs shall be allocated equally between (1) amounts paid in compromise of claims for unpaid wages, including minimum wages and overtime, and (2) amounts paid in compromise of claims for liquidated damages, penalties, compensatory damages, interest, attorney's fees and costs, and other non-wage amounts. Accordingly, 50% of the settlement payments will be subject to income tax withholding at applicable rates and reported on IRS Form W-2, while the other 50% of the settlement payments will not be subject to income tax withholding and will be reported on IRS Form 1099. The attorney's fees will be reported on IRS Form 1099 and are also not subject to income tax withholding. Defendants shall be responsible for the employer's share of applicable federal, state and local payroll taxes with respect to amounts treated as wages. Such obligation shall be in addition to the Award. Except for paying the employer's portion of the payroll taxes, Defendants shall have no responsibility or liability for any federal, state or local taxes owed in connection with the payments made in connection with this settlement. Plaintiffs will be solely responsible for all taxes, interest and penalties individually owed by them with respect to any payment made pursuant to this Agreement.

7.      Defendants will make the payments required within thirty (30) days after the filing of the Court's approval of this settlement. However, no payment of attorney's fees and costs will be made until Plaintiffs' counsel returns a fully completed and executed IRS Form W-9 to Defendants' Counsel to facilitate issuance of an IRS Form 1099. To the extent Defendants request IRS Forms W-4 and/or W-9 (or similar tax forms) from one or more Plaintiffs (e.g., the

---

[2]   References to "Defendants" here and elsewhere in this Award simply indicate that this is a settlement between all Plaintiffs and all Defendants. Although the parties dispute whether Defendant Marc Croce has individual liability in this lawsuit, a determination of that issue was immaterial to this Award and therefore was not made. Whether one or both Defendants process the payments to be made pursuant to this Award, those payments are consideration for and settlement of Plaintiffs' claims against both Defendants.

7

two estates that were substituted for deceased plaintiffs), those will be provided by Plaintiffs'

prior to any payment being made to those Plaintiffs from whom the forms were requested.

8. Such other terms as the parties may mutually agree upon for submission to the

Court for approval.

9. To the extent the Court does not approve this Award as a settlement, then the

Award will be null and void, not binding or enforceable, and not admissible in further

proceedings for any purpose; and the parties will then continue litigating the case or engage in

further mediation efforts.

I remain available to the parties to answer any questions or provide whatever assistance

they deem necessary to obtain Court approval of the settlement and dismissal of this lawsuit.

DATED: Buffalo, New York
December 5, 2014

> /s/ Robert C. Weissflach
> Harter Secrest & Emery LLP
> Twelve Fountain Plaza, Suite 400
> Buffalo, New York 14202
> Telephone: (716) 844-3707
> Email: rweissflach@hselaw.com

**Attachment A**
**Pro Rata Distribution**

| Name | Total |
|---|---|
| Woodrow Brown | $1,462.37 |
| John Camp | $11,422.27 |
| Joseph Felicetta | $2,766.64 |
| James Finan | $829.99 |
| Galen Ford | $5,454.23 |
| Katherine Fremgen | $711.42 |
| Matthew Galantowicz | $10,908.47 |
| Nicole Hesson | $5,849.47 |
| Christopher Johnson | $6,086.61 |
| Matthew Lynett | $2,173.79 |
| Aaron Makin | $158.09 |
| Sean Martin | $7,786.12 |
| William McGuire | $6,837.56 |
| Bryant Moore | $7,509.45 |
| Christopher O'Connor | $2,569.02 |
| David Poletti | $5,335.66 |
| Dennis Porebski | $3,596.63 |
| Jamie Rank | $5,849.47 |
| Christopher Ryan | $869.52 |
| Kevin Schadel | $671.90 |
| Harrison Singer | $3,161.88 |
| David Weaver | $5,454.23 |
| Catherine Willet | $632.38 |
| | $98,097.18 |